UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GREGORY WALKER,
    *Petitioner*,

v.

D.K. WILLIAMS, Warden,
    *Respondent*.

No. 3:16-cv-01048 (JAM)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

At the time this petition was filed, petitioner Gregory Walker was a federal prison inmate at FCI Danbury.[1] He filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging a disciplinary sanction he received for allegedly assaulting another inmate. Petitioner contends that prison officials violated his constitutional due process rights and Sixth Amendment confrontation rights in connection with his disciplinary hearing. He accordingly requests that the Court restore his 27 days of lost "good time" credit and expunge the incident report from his record. Because I conclude that petitioner's disciplinary hearing did not violate petitioner's constitutional rights, I will deny the petition.

BACKGROUND

On August 15, 2015, petitioner allegedly punched another inmate, Dale Hawn, following a verbal altercation over Hawn's cooperation with staff regarding illegal activity at the prison. Doc. #11-2 at 12. A Special Investigative Services (SIS) Technician conducted an investigation of the incident and gathered evidence, including an interview with Hawn two days after the

---

[1] The alleged assault and subsequent disciplinary hearing that is the subject of this petition took place in the Loretto Federal Correctional Institution in Pennsylvania. On December 1, 2015 the Bureau of Prisons transferred petitioner to FCI Danbury. *See* Doc. #2 at 25. According to the BOP inmate locator, petitioner was released from prison on August 24, 2017. Petitioner's release does not render this decision moot. *See, e.g.*, *United States v. Aldeen*, 792 F.3d 247, 250 n.2 (2d Cir. 2015).

1

incident, as well as interviews with petitioner and other inmate eyewitness. *Id.* at 27. The investigator reviewed documentary evidence, including medical assessments and photographs of petitioner and Hawn, an inculpatory "drop note" from Hawn dated August 25, 2015, and an exculpatory drop note and letter allegedly from Hawn dated September 6, 2015.[2] *Id.* at 27–28. The investigation was completed on September 13, 2015.[3] *Id.* at 24. The SIS technician summarized the results of the investigation in an "Inmate Investigative Report," which recommended that petitioner be charged with assault. *Id.* at 28.

Prison officials provided petitioner with an incident report detailing the allegations on September 13, 2015. *Id.* at 12. In compliance with 28 C.F.R. § 541.7, the Unit Discipline Committee (UDC) reviewed the incident report and referred the matter to the Disciplinary Hearing Officer (DHO) for further action. *Ibid.* In its review, the UDC considered a written statement from petitioner denying the charges and requesting that the victim serve as a witness. *Id.* at 13. Two days later, petitioner was provided with a notice of disciplinary hearing before the DHO. *Id.* at 16. Petitioner was advised of his rights, including the right to have a staff member represent him, to call witnesses, and to present documentary evidence on his behalf "provided institutional safety would not be jeopardized." *Id.* at 15. Petitioner declined to have a staff member represent him, but requested that Hawn serve as a witness to testify that petitioner "did

---

[2] The government did not put the photographs, the August 25 drop note, or the September 6 drop note and letter in the record. However, these pieces of evidence are cited in the SIS investigative report, Doc. #11-2 at 28, and in the DHO report, *id.* at 8. Additionally, the September 6 drop note and letter appear to be the same letter discussed by petitioner, which is dated September 2, 2015. Doc. #2 at 29.

[3] There is some confusion in the record regarding the timing of the investigation. The DHO report states that the DHO relied on the SIS Report "dated August 31, 2015." Doc. #11-2 at 9. However, the report includes many pieces of evidence from early September, including evidence from September 10. *Id.* at 28. Additionally, the inmate discipline record indicates that the investigation was pending until September 13, 2015. *Id.* at 24. The incident report also indicates that the investigation ended on September 13. *Id.* at 12 ("On September 13, 2015, at approximately 8:00 a.m. upon the completion of an SIS investigation…"). Accordingly, it appears that the investigation was completed on September 13, and the DHO report date of August 31 was a harmless error. *See Ayers v. Selsky,* 467 F. App'x 45, 47 (2d Cir. 2012).

not punch him." *Id*. at 16.

On October 2, 2015, the DHO conducted petitioner's disciplinary hearing. Doc. #2 at 34. At the hearing, petitioner again denied the charge and requested that Hawn appear as a witness; petitioner did not present any additional evidence or testimony on his behalf. Doc. #11-2 at 7. The DHO declined to call Hawn as a witness, because he was the inmate involved in the assault. *Ibid*. However, the DHO interviewed Hawn shortly before the hearing. Doc. #2 at 34 (noting that the interview occurred at 6:40 p.m. and the hearing occurred at 6:45 p.m.). The initial DHO report did not describe the contents of this interview, but an amended DHO report stated that Hawn informed the DHO that petitioner "argued with him, called him a rat, and when he went to walk away he punched him." *Ibid.*

The DHO found petitioner guilty of assault and imposed a sanction of 27 days loss of good conduct time, 30 days of disciplinary segregation, and 180 days loss of commissary privileges. *Id.* at 36. In addition to the incident report and Hawn's pre-hearing statement, the DHO relied on the following evidence in making his decision: (1) medical assessments of Hawn and petitioner taken about two weeks after the incident; (2) photographs of Hawn and petitioner taken almost a month after the incident; (3) the drop note dated August 25, 2015, from Hawn to the investigator stating that petitioner assaulted him; (4) the SIS investigative report; and (5) a letter from Hawn claiming that petitioner did *not* punch him. Doc. #11-2 at 9. The DHO report explaining the basis for the decision was delivered to petitioner shortly after the hearing.

Petitioner appealed the DHO's decision, first to the Regional Director of the Bureau of Prisons and then to the Central Office. Doc. #11-2 at 30–55. The first appeal was denied, and petitioner never received a response to his Central Office appeal within the time frame allotted by BOP regulations. Under 28 C.F.R. § 542.18, petitioner may treat the lack of response to this

appeal as a denial. Therefore, petitioner properly exhausted his administrative remedies before filing this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. His petition seeks to have his 27 days good time restored and to have the incident report expunged from his record.

## DISCUSSION

A prisoner may challenge prison disciplinary sanctions, including loss of good time credits, by means of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). The loss of good time credits as punishment for prison disciplinary offenses implicates a liberty interest protected by the Fourteenth Amendment. *See Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974)). Accordingly, prisoners must be afforded basic due process protections before such a sanction can be imposed. An inmate facing disciplinary action must be given "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira*, 380 F.3d at 69 (citing *Wolff,* 418 U.S. at 563–67).

Petitioner claims that respondent violated his constitutional rights by: (1) failing to serve his incident report within 24 hours of staff becoming aware of his alleged involvement in the assault; (2) denying his request to call Hawn as a witness; and (3) finding him guilty on insufficient evidence. For the reasons stated below, I conclude that none of these arguments has merit.

*Delivery of incident report*

Petitioner first contends that respondent violated federal regulations by failing to deliver petitioner's incident report until 29 days after the purported assault. A federal regulation states that prisoners "will ordinarily receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." 28 C.F.R. § 541.5(a). Petitioner avers that the failure to abide by this regulation constituted a violation of his due process rights. But even if petitioner is correct that the BOP violated this regulation, the "failure to provide an inmate with an [incident report] within 24 hours of an incident does not violate due process." *Brennan v. United States*, 646 F. App'x 662, 667 (10th Cir. 2016); *Jacques v. Bureau of Prisons*, 632 F. App'x 225, 226 (5th Cir. 2016) (same); *Wallace v. Fed. Det. Ctr.*, 528 F. App'x 160, 162-63 (3d Cir. 2013) (same). So long as petitioner was provided the minimum due process described by the Supreme Court in *Wolff*, the delay in providing the incident report does not violate due process.

Petitioner received the incident report more than two weeks before the DHO hearing, which is well beyond the 24-hour notice required by *Wolff* and ample time for him to prepare for the hearing. *See Rodriguez v. Lindsay*, 498 F. App'x 70, 71 (2d Cir. 2012) (noting that prisoners are "constitutionally entitled only to the process outlined in *Wolff*" and that "*Wolff*'s relevant 24–hour notice period does not run from the perpetration of the alleged incident, but rather works backward from the beginning of the disciplinary hearing relating to that incident"). Therefore, petitioner's complaint about the late delivery of the incident report is meritless.

*Right to Confront Witness*

Petitioner next claims that the DHO violated both his due process rights and the Sixth Amendment right to confrontation by declining to call Hawn as a witness. A prisoner has the right to call witnesses and present evidence "when permitting him to do so will not be unduly

hazardous to institutional safety or correctional goals" *Wolff*, 418 U.S. at 566. Still, prisoners generally do not have a Sixth Amendment right to cross examine their accuser in the prison disciplinary context. *Id.* at 568. Prison officials may disallow witnesses at disciplinary hearings without violating due process if the denial is "logically related to preventing undue hazards to institutional safety or correctional goals." *Ponte v. Real*, 471 U.S. 491, 497 (1985) (internal quotations omitted). Such a hazard may be present even when the prisoner knows the witness's identity because "although the dangers posed by cross-examination of known inmate accusers, or guards, may be less, the resentment which may persist after confrontation may still be substantial." *Wolff*, 418 U.S. at 568–69.

The Second Circuit has held that a prison official may properly exclude a victim witness based on concerns of potential retaliation. *See Freeman v. Rideout*, 808 F.2d 949, 954 (2d Cir. 1986); *see also Luna v. Pico*, 356 F.3d 481, 489-90 (2d Cir. 2004) (suggesting that prison officials may conduct an "independent credibility assessment" of a victim-accuser in lieu of in-person testimony). Here, the DHO's decision to exclude Hawn was logically related to protecting him from potential retaliation. Accordingly, I find that petitioner's due process and Sixth Amendment rights were not violated when he did not have the opportunity confront and cross-examine Hawn at the hearing.

### *Sufficiency of Evidence*

Finally, petitioner contends that the guilty disposition did not rest on sufficient evidence and that the DHO's reliance on insufficient evidence violated his duty to act in a fair and impartial manner. A prisoner's due process rights are satisfied if "some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). Although the Second Circuit has cautioned that the

DHO must base the decision on "reliable evidence," it has clarified that the "some evidence" standard is "extremely tolerant" and will be satisfied if there is "*any* evidence in the record that supports the disciplinary hearing." *Woodard v. Shanley*, 505 F. App'x 55, 57 (2d Cir. 2012) (citing *Sira*, 380 F.3d at 69, and *Luna v. Pico*, 356 F.3d at 488).

The "some evidence" standard is easily satisfied in this case. The DHO's finding is supported by substantial reliable evidence, including the SIS investigator's interviews of Hawn and other inmate eyewitnesses, as well as the DHO's own interview of Hawn. The DHO also relied on documentary evidence, including a written letter from Hawn stating that petitioner had punched him. Furthermore, because the DHO relied on sufficient evidence, there is nothing in the record to support the claim that the DHO failed to be fair or partial. Accordingly, I conclude that respondent did not violate petitioner's due process rights.

## CONCLUSION

Because petitioner's disciplinary hearing did not violate his constitutional rights to due process and confrontation, the petition for habeas corpus relief (Doc. #1) is DENIED. Petitioner has not made a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2), and no certificate of appealability shall enter. The Clerk is directed to enter judgment in favor of respondent and to close this case.

It is so ordered.

Dated at New Haven this 2d day of January 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge